**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Case No. 21-MJ-297-GMH |
| v. : | |
| : | |
| THOMAS F. SIBICK, : | |
| : | |
| Defendant. : | |

**MOTION FOR EMERGENCY APPEAL**
**OF RELEASE ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to review the decision by the Magistrate Judge from the Western District of New York to deny the government's motion for pre-trial detention and release the defendant. In support thereof, the government states the following:

**I.      BACKGROUND**

**A.      Procedural Posture**

On March 12, 2021, defendant Thomas F. Sibick was arrested in his home state of New York on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge G. Michael Harvey in connection with a Criminal Complaint charging the defendant with Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), Assaulting, resisting, or impeding certain officers or employees, in violation of 18 U.S.C. § 111(a)(1), Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. § 1752(a)(1), Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2), and Taking from

1

a Person Anything of Value by Force and Violence or by Intimidation Within Special Maritime and Territorial Jurisdiction, in violation of 18 U.S.C. § 2111.

At his detention hearing in the Western District of New York on March 12, 2021, the government made a motion to detain the defendant without bond pending trial. The defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(A), which provides for detention in cases involving a crime of violence. In this case, 18 U.S.C. § 2111 constitutes a crime of violence. At the conclusion of the hearing, after reviewing the evidence presented, Magistrate Judge H. Kenneth Schroeder, Jr. notified the parties that he was releasing the defendant and ordered that the release be effectuated immediately. Despite our best efforts, the defendant was released while the government was preparing this motion.

From that release order, the government hereby appeals. Jurisdiction over this review and appeal lies in this Court, rather than to a judge in New York, pursuant to 18 U.S.C. § 3145(a)(1) (when defendant is released by person other than judge of court having original jurisdiction over offense, government's appeal lies to court of original jurisdiction).

**B.     Statement of Facts**

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

On January 6, 2021, Metropolitan Police Department ("MPD") Officer M.F. responded to a radio call for assistance at the U.S. Capitol. Officer M.F. was in full MPD uniform and equipped

with a body-worn camera. Officer M.F. responded to the west front of the U.S. Capitol and became involved with other officers in the effort to push back rioters from the doorway to the U.S. Capitol at the lower west terrace. While Officer M.F. was defending the doorway, a rioter pulled Officer M.F. into the crowd, where members of the crowd beat, tased, and robbed Officer M.F. of his MPD badge (#3603), police radio, and MPD-issued 17-round magazine, while also trying to forcibly remove his service weapon from its fixed holster. The radio was securely attached to Officer M.F.'s tactical vest, and the badge was pinned to the vest. As a rioter attempted to get Officer M.F.'s gun, Officer M.F. heard him yell words to the effect that he was going to take Officer M.F.'s gun and kill him. Following the assault, Officer M.F. lost consciousness and was hospitalized for his injuries, including a likely concussion and injuries from the taser. Officer M.F. was admitted to the hospital for monitoring of his cardiac activity.

Officer M.F.'s tactical vest contained a hole where the badge had been forcibly ripped out. Figures 1 through 3 below depict the condition of Officer M.F.'s tactical vest after the assault. Figure 2 shows the compartment where Officer M.F.'s police radio was securely attached to his vest when it was ripped off. Figure 3 depicts the hole caused by the badge being forcibly ripped off. Figure 4 depicts the back of a new badge that was issued to Officer M.F. since his badge was stolen. The vertical pin used to attach the badge, which was designed the same way in Officer M.F.'s stolen badge, matches the tear in the officer's tactical vest.



Figure 1



Figure 2



Figure 3



Figure 4

Officer M.F.'s body-worn camera depicts the attack, including footage of an individual reaching toward Officer M.F. and pulling out objects consistent with an MPD badge and police

6

radio. Figures 5 through 8 are screenshots from Officer M.F.'s body-worn camera depicting the robbery.



Figure 5



Figure 6



Figure 7



Figure 8

On January 21, 2021, FBI agents in Buffalo, NY, interviewed WITNESS 1 regarding potential information related to the events at the U.S. Capitol on January 6, 2021. WITNESS 1 reported that Thomas Sibick ("SIBICK") posted a video of the riot to his Instagram account.

8

WITNESS 1 provided the video, which shows footage of SIBICK using his cell phone to record himself on the inauguration ceremony stage of the lower west terrace where he screams, "Just got tear-gassed, but we're going, baby, we're going! We're pushing forward now!" Figures 9 and 10 are still images from the video.



Figure 9



Figure 10

On January 27, 2021, agents interviewed WITNESS 2, who is familiar with SIBICK. WITNESS 2 provided a photograph that WITNESS 2 reported receiving from another individual who saw the photo on SIBICK's Facebook account. The photograph depicts SIBICK with a U.S. Capitol Police Shield. SIBICK is wearing a black and gray hat, black sweater with a gray "The North Face" vest, and blue jeans. Figure 11 shows the photo.



Figure 11

Review of surveillance footage from January 6, 2021, showed that around 3:08 p.m., an individual who appears to be SIBICK moved to the mouth of the tunnel on the lower west terrace that led inside the Capitol building. At that time, a group of U.S. Capitol Police ("USCP") and MPD officers had formed a police line at that entrance to the Capitol to prevent the mob from entering the building through that entrance. Figure 12 shows SIBICK at the mouth of the tunnel with other individuals in the mob; he is facing the direction of the police line, which was located immediately in front of the doors to the Capitol building at that time. SIBICK then entered inside the tunnel, as shown in Figure 13. He moved forward to the police line until he was no longer visible on camera. Around 3:11 p.m., SIBICK turned around and moved outside the tunnel, as shown in Figure 14.



Figure 12



Figure 13



Figure 14

An open source video posted on YouTube shows SIBICK exiting the tunnel, as shown in Figures 15.[1] SIBICK can be heard saying, "Let me out. Let me out." An individual in front of him assists SIBICK in getting out such that SIBICK is no longer visible on camera. At that point, a voice that likely belongs to the man who helped SIBICK tells SIBICK "Thank you for your service," and then asks where he is from. A voice that seems to be SIBICK's can be heard saying, "Buffalo," and then states, "Let's go. Let me just get refreshed."

---

[1] The video can be found at *https://www.youtube.com/watch?v=0zyjCvDN4Ig&feature=youtu.be*. SIBICK is visible coming out of the tunnel from minute marker 1:14:32 to 1:14:42.

13



Figure 15

Agents conducted an initial interview of SIBICK on January 27, 2021. SIBICK acknowledge being in Washington, D.C. at the U.S. Capitol on January 6, 2021. SIBICK stated that while he was at the Capitol, he saw a D.C. Metro Police Officer being pulled down the steps and hit with what SIBICK described as a "flagpole." SIBICK also reported seeing at least two other individuals beating the D.C. Metro Police Officer and attempting to get his gun, but were unable to do so because of the "plastic piece on top of the holster." SIBICK heard someone say, "Get his gun and kill him." SIBICK stated that he attempted to reach the officer to pull him away but was unable to get to him and at that point he feared for his life and that of the officer. SIBICK further stated that due to the violence, he decided to leave. When shown the photograph of SIBICK holding the riot shield, SIBICK said that the shield had been passed through the crowd and SIBICK asked a man next to him to take his picture with it. SIBICK further explained that a man in a tactical vest asked SIBICK if he was going to "use" the shield, to which SIBICK replied, "No."

On February 2, 2021, SIBICK contacted one of the agents who had previously interviewed him and stated that he had been thinking about the individuals that assaulted the police officer and

14

that he was going to email the agent with more information. When asked if he had anything different to add to his previous interview, SIBICK replied, "No." When asked if the details he described in his prior interview were accurate and honest, SIBICK replied, "Yes." The agent asked SIBICK if he had participated or was involved in any way in the assault of the D.C. police officer, and SIBICK replied, "No" and reiterated that he had tried to pull the officer away but was unsuccessful.

On February 23, 2021, the agents re-interviewed SIBICK after law enforcement observed an individual consistent with SIBICK's appearance on Officer M.F.'s body-worn camera. The agents showed SIBICK still shots from Officer M.F.'s body-worn camera. SIBICK admitted to grabbing the officer's badge and radio. SIBICK stated that he had reached in to try to help the officer, and that he remembered the badge coming off as he reached for him. SIBICK said that he pressed the "emergency orange button" once he had possession of the radio to get help for the officer.[2][3] SIBICK also stated that he dropped the badge and radio and left. When asked if he saw anyone pick up the radio and badge, SIBICK said that he carried the radio and badge with him when he left and dropped them in a trash can on Constitution Avenue. SIBICK stated that he thought about giving the items to an officer but was afraid of being arrested. Later in the interview, SIBICK stated that he needed to "recant" his statement and that he actually brought the items to his hotel room and then back to his home in Buffalo, NY. SIBICK stated that the day after he returned to Buffalo, he was planning to turn the items in to the FBI. However, he was afraid of

---

[2] Agents attempted to check records to verify whether the emergency button on Officer M.F.'s radio had been activated around the time of the robbery. However, when Officer M.F.'s radio was reported stolen, it was deactivated, which erased records of the radio's use, including any records of the emergency button being activated.

[3] The information in Footnote 2 above was corrected in the Notice of Errata filed under seal by the government in this matter on March 12, 2021. The information was corrected as follows: Although the Metropolitan Police Department ("MPD") initially believed that the data had been erased, MPD was later able to recover some data from Officer M.F.'s radio activity on January 6, 2021. The data showed that the emergency button was pressed at 2:37 p.m. and 3:37 p.m. According to Figures 5-8 in the Statement of Facts (ECF No. 1, 2), Officer M.F.'s body-worn camera shows SIBICK taking the radio at 3:19 p.m.

being arrested and instead threw them in a dumpster on North Street in Buffalo. SIBICK later clarified that it was a dumpster located on the back alleyway of the Lenox Hotel at 140 North Street.

On February 25, 2021, an agent sent SIBICK a ruse email stating that the security cameras at the Lenox Hotel were going to be checked to confirm SIBICK's statement that he disposed of the badge and radio in the dumpster. On February 26, 2021, SIBICK called the agent stating that he was distraught and "wanted to do the right thing." SIBICK stated that he did not dispose of the badge in the dumpster behind the Lenox Hotel. Rather, he had buried the badge in his backyard. SIBICK stated that he purchased a metal detector to find the badge, which he then dug up, and that he wanted to return it. SIBICK stated that he had actually thrown away the radio, however.[4] Later that night, SIBICK met the agent and gave him a bag containing mud and Officer M.F.'s badge (#3603). A photo of the badge is depicted in Figure 16.

---

[4] Agents were unable to find any security cameras to confirm or refute SIBICK's claim.



Figure 16

## C.     Order for Release

After the detention hearing in the Western District of New York today, March 12, 2021, the presiding magistrate judge issued an Order of Release for the defendant with certain conditions, including home confinement at his parents' home. The defendant is eligible for detention pursuant to 18 U.S.C. § 3142(f)(1)(A), which provides for detention in cases involving a crime of violence, that being taking from a person anything of value by force and violence or by intimidation within special maritime and territorial jurisdiction, in violation of 18 U.S.C. § 2111. This is based on a combination of the facts underlying the instant offense, including his assaults on federal officers and his obstructive and disruptive conduct at the U.S. Capitol, and his criminal history.

Today, Magistrate Judge H. Kenneth Schroeder, Jr. denied the government's detention motion and ordered the defendant be released immediately. The government orally sought a stay

of the Order pending this Motion for Review. The magistrate judge denied that request, and despite our best efforts, the defendant was released while we were preparing this motion.

The government hereby appeals and seeks review of that release order.

### III.    ARGUMENT

Title 18, U.S.C. § 3145(a) states:

> **(a) Review of a release order –** If a person is ordered released by a magistrate, … (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad.

News 3182, 3195-3196.[5]

The defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(A) because he is charged with a felony involving a crime of violence. In this case, the defendant participated in a violent riot and robbed an officer on January 6, 2021. Consequently, the government requests review of the magistrate judge's decision to release the defendant.

For the reasons stated herein, the government seeks this appeal of Magistrate Judge H. Kenneth Schroeder, Jr. decision to release the defendant.

**WHEREFORE**, the United States respectfully prays this Honorable Court to convene a hearing to review the decision to release Thomas F. Sibick and to order instead that he be held without bond pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

---

[5] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

    */s/ Cara Gardner*
Cara Gardner
Assistant United States Attorney
D.C. Bar 1003793
U.S. Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
202-252-7009
Cara.Gardner@usdoj.gov

*/s/Tara Ravindra*
Tara Ravindra
Assistant United States Attorney
D.C. Bar No. 1030622
555 4th Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-7672
Tara.Ravindra@usdoj.gov