AO 472 (Rev. 11/16; DC 1/19) Order of Detention

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| United States of America )<br>v. )<br>Thomas F. Sibick )<br>_____ )<br>*Defendant* ) | Case No.   21-mj-297 |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☑ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☐ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:
 ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):
  ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**
  ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**
  ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**
  ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**
  ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
   **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
   **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**
 ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**
 ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**
 ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

- ☐ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:
    - ☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);
    - ☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;
    - ☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
    - ☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**
    - ☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

- ☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

    - ☐ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis, with the evidence or argument presented by the defendant summarized in Part III.C.

    - ☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

        **OR**

    - ☐ The defendant has not presented sufficient evidence to rebut the presumption. Moreover, after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

### Part III - Analysis and Statement of the Reasons for Detention

A. After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

- ☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

- ☒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

B. In addition to any findings made on the record at the hearing, the reasons for detention include the following:

- ☒ Weight of evidence against the defendant is strong
- ☒ Subject to lengthy period of incarceration if convicted
- ☒ Prior criminal history
- ☐ Participation in criminal activity while on probation, parole, or supervision

❒ History of violence or use of weapons
❒ History of alcohol or substance abuse
❒ Lack of stable employment
❒ Lack of stable residence
❒ Lack of financially responsible sureties
❒ Lack of significant community or family ties to this district
❒ Significant family or other ties outside the United States
❒ Lack of legal status in the United States
❒ Subject to removal or deportation after serving any period of incarceration
❒ Prior failure to appear in court as ordered
❒ Prior attempt(s) to evade law enforcement
❒ Use of alias(es) or false documents
❒ Background information unknown or unverified
❒ Prior violations of probation, parole, or supervised release

**C. OTHER REASONS OR FURTHER EXPLANATION:**

The defendant's evidence/arguments for release:

See Attachment.

Nature and circumstances of offense:

See Attachment.

The strength of the government's evidence:

See Attachment.

The defendant's history and characteristics, including criminal history:

See Attachment.

The defendant's dangerousness/risk of flight:

See Attachment.

### Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: 03/17/2021

Beryl A. Howell
Chief Judge

*United States v. Sibick*, 21 MJ 297

**ATTACHMENT TO ORDER OF DETENTION PENDING TRIAL, PART III. C:**
**Consideration of Defendant's evidence/arguments for release and**
**18 U.S.C. § 3142(g) Factors**

(1) <u>The Nature and Circumstances of the Offense</u>:

  The nature and circumstances of the offense heavily weigh in favor of detention. Defendant is charged with three felonies, plus two misdemeanor violations, and faces up to 15 years imprisonment, Crim. Compl., ECF No. 1, based on his alleged offense conduct of enthusiastically participating in the assault on the Capitol on January 6, 2021, to stop the constitutionally mandated process of counting electoral votes. Rather than being deterred by the presence of law enforcement and police activity to block entry into the Capitol building, defendant took a video of himself yelling "Just got tear-gassed, but we're going, baby, we're going! We're pushing forward now!" Gov't's Mem. Supp. Detention ("Gov't's Mem.") at 6, ECF No. 8. After being involved in a mob surge to enter one entryway into the Capitol building, defendant stepped away to be "refreshed," and then proceeded to be involved in the assault on Metropolitan Police Department ("MPD") Officer M.F. underlying each of his three felony offenses.

  While the MPD officer was being assaulted by a mob—with injuries severe enough to require hospitalization—defendant ripped the officer's badge and radio from the officer's vest. Gov't's Mem. at 5, 11. Defendant then took the badge and radio back to Buffalo when he left the scene. *Id.* at 15–16.

  Over the course of the next seven weeks, defendant tried to hide incriminatory evidence of his involvement in the assault by burying the badge and apparently throwing away the police radio, and repeatedly lied to law enforcement about his involvement in the assault on Officer M.F., undercutting defendant's statement during the investigation that he was trying to help the officer. *See* Crim. Compl., Statement of Facts at 11, ECF No. 1-1. In his first interview, on January 27, 2021, defendant was not honest about reaching Officer M.F. and stated simply that he tried to reach the officer and pull him away. Gov't's Mem. at 14. Next, on February 2, defendant called one of the agents who had interviewed him and indicated that his previous statements were accurate and that he did not participate in the assault on the officer. *Id.*

On February 23, FBI agents interviewed defendant again after observing defendant in footage taken from the officer's body-worn camera ("BWC"). *Id.* Faced with the BWC footage, defendant admitted to grabbing the officer's badge and radio but claimed that he was trying to help the officer, as supported by his claim that he pushed the "emergency orange button" on the officer's radio. *Id.* at 14–15. Defendant's story then changed, several times during the interview. First, he said that he dropped the radio and badge. Next, he said that he took the items, but dropped them in a trash can on Constitution Avenue in Washington, D.C. Finally, he said that he took them back to Buffalo and when on his way to take the items to the FBI became afraid of being arrested and threw them into a dumpster. *Id.* at 15. Data from the radio indicates that the emergency button on the radio was not pressed until eighteen minutes after defendant took the radio and sixteen minutes after the officer had been pulled to safety and collapsed unconscious. *Id.* at 16–17.

On February 25, an agent sent defendant a "ruse email" stating that the security cameras around the dumpster where defendant said he had discarded the stolen police badge and radio were going to be checked to confirm defendant's story. *Id*. at 15. The next day, defendant admitted that he had not discarded the badge in the dumpster but had instead buried it in his backyard. That night, defendant returned the badge covered in dirt to the agent. *Id.* at 15–16.

(2) The Weight of the Evidence Against the Person:

The weight of the evidence against the defendant is overwhelming and heavily favors detention. The government has video footage, including BWC footage, and many photos of defendant from the assault on the Capitol. The photos and videos show defendant enthusiastically participating in the riot, posing with a Capitol Police riot shield, joining a mob assaulting an MPD officer, and using the opportunity to rip from the officer his badge and his lifeline to help, his police radio. The government also recovered evidence—the badge—directly from defendant.

(3) The History and Characteristics of the Person:

The history and characteristics of the defendant also weigh in favor of detention. Defendant's criminal history includes six arrests and five convictions, with a 2015 conviction for failure to stop or respond for a police command, which had included a dismissed charge for

carrying a concealed firearm. Gov't's Mem. at 23. Defendant also repeatedly lied and misled law enforcement regarding his conduct during the riot at the Capitol and afterwards. The video posted by defendant on January 7, 2021 shows a lack of remorse regarding his actions the previous day, stating that "the people are mad" and that "the people had spoken." Defendant further stated that "what happened yesterday is a disgrace," which, in context, appears to refer to the lack of success of the riots the previous day. Defendant notes that he was employed in a nursing home prior to this case and has no history of substance abuse or addiction, Def.'s Resp. to Gov't's Mot. for Appeal of Release Order ("Def's Resp.") at 8, ECF No. 9, but this factor still weighs in favor of detention.

(4) <u>The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Person's Release</u>:

The nature and seriousness of the danger to the community posed by the defendant's release also weighs in favor of detention. Defendant was part of the mob assault on the Capitol in which people lost their lives and Congress's constitutional task of counting electoral college votes was disrupted. More than that, however, and most significantly, defendant appears to have joined in a terrible assault on a police officer, who was dragged into the crowd, beaten and tasered, and had his police property stolen. Defendant was responsible for stealing the officer's badge and police radio. Even if there is no evidence at this time that defendant was directly responsible for the officer's injuries, as the government notes, the radio that defendant stole was Officer M.F.'s "lifeline to call for help." Gov't's Mem. at 21. Defendant's vigorous participation in different aspects of the mob violence at the Capitol and assault of and theft from an officer indicates that defendant poses a threat to others and to the community if released. Defendant's misrepresentations, lies, and lack of remorse raise questions about defendant's willingness to abide by release conditions.

Defendant argues that his lack of violent action over the previous two months and his lack of planning, coordination, and leadership suggest that he does not present an ongoing threat of violence. Def.'s Resp. at 9–10. While these factors are probative of a defendant's determination to persevere in committing acts of political violence, *see United States v. Chrestman*, Case No. 21-mj-218 (BAH), 2021 WL 765662, at *15–16 (D.D.C. Feb. 26, 2021), they are not dispositive in every case. The particular offense conduct at issue here, compounded

by defendant's obstructive conduct and statements post-January 6, 2021, provide clear and convincing evidence that defendant may, if the opportunity presented itself, participate in further acts of politically motivated violence.

      Further, defendant argues that the government's delay in arresting him is probative of his lack of dangerousness but any delay, brief as it is here, is not compelling in this case, given the complexity of the investigation confronting law enforcement, with voluminous video, tips and other leads to pursue to identify persons in the mob who engaged in activity warranting criminal charges. Any delay in making an arrest is more likely be due to the government's need to investigate and build its case rather than any evaluation of dangerousness.